UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **SVEN SCHREIBER and ARNALDO PICCINELLI,** <br><br> Defendants. | 1:21-CR-10016-CBK <br><br> **REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTIONS TO DISMISS** |

In this bribery case, Sven Schreiber and Arnaldo Piccinelli (collectively Defendants) have separately moved to dismiss their joint indictment on venue grounds. Because the government has shown, by a preponderance of the evidence, that venue in the District of South Dakota is proper, the dismissal motions should be denied.

## BACKGROUND

The parties stipulated to these facts to address the venue motions. In December 2015, Schreiber became the Director of the Information Technology (IT) Department for the Standing Rock Sioux Tribe. The Tribe's land overlaps the border of North and South Dakota, encompassing all of Corson County, South Dakota and all of Sioux County, North Dakota. Schreiber's duties included generating bids, contracts, and agreements between the Tribe's IT Department and outside vendors. He worked at an office in Fort

Yates, North Dakota, and the Tribe paid him a salary from a Wells Fargo bank account in Mobridge, South Dakota.

Schreiber hired Piccinelli as an IT consultant on a sole-source, contract basis with the Tribe. Piccinelli's consulting services included developing and managing webpages on behalf of the Tribe and its members in North and South Dakota. The Tribe paid Piccinelli for his services from funds held at the Mobridge Wells Fargo. Piccinelli would submit invoices to Schreiber, who would then start them through the purchase order process, resulting in the Tribe issuing checks to Piccinelli drawn on the same Wells Fargo bank.

All told, Piccinelli received 12 payments from the Tribe's South Dakota bank account. Piccinelli informed investigators that on several occasions, while he and Schreiber were in Florida, he withdrew funds derived from these tribal payments and gave them to Schreiber. The payments were purportedly kickbacks from Piccinelli to Schreiber and they occurred three times and in differing amounts: between $4,000 and $6,000 on February 16, 2017; $6,000 between September 1 and 14, 2017; and $4,000 on July 19, 2019.

A federal grand jury indicted Schreiber on three counts of violating 18 U.S.C. § 666(a)(1)(B), for having corruptly solicited, demanded, agreed, and agreed to accept a thing of value from Piccinelli, intending to be influenced and rewarded in connection with the transactions involving the IT Department of the Tribe. The grand jury likewise indicted Piccinelli on three counts of violating 18 U.S.C. § 666(a)(2) for having corruptly

given, offered, and agreed to give a thing of value to Schreiber intending to influence and reward him, while Schreiber acted as an agent of the Tribe, in connection with a transactions with the Tribe's IT Department.

Schreiber now moves to dismiss the indictment due to improper venue.[1] Piccinelli brings a comparable motion.[2] The Government opposes the motions.[3]

## DISCUSSION

Together, Defendants argue that there is not sufficient evidence of a South Dakota connection to allow for venue to be proper in the state's federal district court.[4] As a consequence, they say, the indictment should be dismissed.[5] The Court disagrees.

Article III, § 2 of the United States Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure require proper venue.[6] "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was

---

[1] Docket No. 40.

[2] Docket No. 45

[3] Docket Nos. 43 and 50.

[4] Docket No. 41 at 1-7.

[5] Docket Nos. 40 and 45.

[6] *United States v. Banks*, 706 F.3d 901, 904 (8th Cir. 2013).

begun, continued, or completed."[7] The place of the offense "must be determined from the nature of the crime alleged and the location of the act or acts constituting it."[8] To make this determination, "a court must initially identify the conduct constituting the offense (nature of the crime) and then discern the location of the commission of the criminal act."[9] The Government must establish that venue is proper by a preponderance of the evidence.[10]

At the outset, the Government claims that we need look no further than the indictment because the indictment is valid and contains the necessary venue language.[11] While ordinarily true,[12] here the parties have stipulated to various factual matters.[13] The Government's proposed myopic approach would require a court to willfully blind itself to concessions by the parties that are otherwise "conclusive in the case" and that "have the effect of withdrawing a fact from issue and dispensing wholly with the need

---

[7] 18 U.S.C. § 3237(a).

[8] *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (citation omitted).

[9] *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

[10] *United States v. Johnson*, 956 F.3d 510, 517 (8th Cir. 2020).

[11] Docket No. 43 at 3-4.

[12] *See United States v. Hardaway*, 999 F.3d 1127, 1130 (8th Cir. 2021) ("When a defendant moves to dismiss for lack of venue, however, the court must presume the truth of the allegations in the indictment and consider whether venue is proper based on those allegations.").

[13] Docket No. 42, 46-2.

for proof of the fact."[14] The Court will, instead, consider the indictment and the stipulated facts in concert to the extent they do not conflict.

The parties concede that the acts constituting the alleged kickbacks took place in multiple states.[15] Because venue is proper in "any district in which [an] offense was begun, continued, or completed," we must assess the connections between the charged offenses and the District of South Dakota.[16] Only essential conduct elements may serve as the basis for venue.[17]

Schreiber is charged with violating 18 U.S.C. § 666(a)(1)(B). The statute makes it a crime when an agent of an Indian tribal government or any agency thereof:

> corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such…government[ ] or agency involving any-thing of value of $5,000 or more.[18]

---

[14] *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677-78 (2010) (quoting K. Broun, *McCormick on Evidence* § 254, p. 181 (6th ed. 2006)); *see also Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880) ("The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced.").

[15] Docket No. 52 at 2.

[16] *Cabrales*, 524 U.S. at 6-7.

[17] *Rodriguez-Moreno*, 526 U.S. at 280 n.4.

[18] 18 U.S.C. § 666(a)(1)(B).

The four elements the Government must prove beyond a reasonable doubt to convict Schreiber of this offense are:

1. Schreiber was an agent of the Standing Rock Sioux Tribe;
2. He corruptly solicited, demanded, or accepted from Piccinelli something of value, that is money, in connection with the Tribe's consulting contracts;
3. The contracts involved something of value of $5,000 or more; and
4. The Tribe received federal assistance in excess of $10,000 pursuant to a federal program in the following one-year periods: October 1, 2015 and September 30, 3016; October 1, 2016 and September 30, 2017; October 1, 2017 and September 30, 2018; October 1, 2018 and September 30, 2019.[19]

"Corruptly" means that Schreiber acted voluntarily and, at least in part, in return for being influenced to award Piccinelli consulting contracts or rewarded for Piccinelli getting them.[20]

Piccinelli is charged under 18 U.S.C. § 666(a)(2). This statute makes it a crime when one:

> corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an … Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such …government[ ] or agency involving anything of value of $5,000 or more.[21]

---

[19] Eighth Circuit Model Jury Instructions (Criminal) 6.18.666B (2020 ed.).

[20] *Id.*

[21] *See* 18 U.S.C. § 666(a)(2).

To convict Piccinelli under the statute, the Government must prove four elements, beyond a reasonable doubt:

1. Schreiber was an agent of the Standing Rock Sioux Tribe;
2. Piccinelli corruptly gave, offered to give, or agreed to give money to Schreiber in connection with the Tribe's consulting contracts;
3. The contracts involved something of value of $5,000 or more; and
4. The Tribe received federal assistance in excess of $10,000 pursuant to a federal program in the following one-year periods: October 1, 2015, and September 30, 2016; October 1, 2016 and September 30, 2017; October 1, 2017 and September 30, 2018; October 1, 2018, and September 30, 2019.[22]

To satisfy the second or "corrupt" element, the Government must show that Piccinelli acted voluntarily and intentionally and, at least in part, to influence Schreiber to award the consulting contracts or reward Schreiber for such contracts.[23]

The parties stipulated that Schreiber, while acting as the Tribe's IT Director in North Dakota, allegedly accepted bribes (kickbacks) from Piccinelli, via payments from consulting contracts, for work Piccinelli did on behalf of South Dakota tribal members.[24] The contracts comprise the second and third elements of proof for both Defendants and the value of such contracts ($5,000+) is derived from the payments the Tribe made to Piccinelli from its South Dakota bank account. Piccinelli supposedly obtained these

---

[22] Eighth Circuit Model Jury Instructions (Criminal) 6.18.666C.

[23] *Id.*

[24] Docket Nos. 42 and 46-2.

payments by submitting invoices to Schreiber, who put them into the payment review stream, culminating in the issuance of checks from this same account.[25] The two stipulations, the parties signed, reflect that the charged bribes, or kickbacks, to Schreiber coincided with the payments the Tribe made to Piccinelli from the account.[26] Neither stipulation contradicts the indictment's averments that Defendants violated 18 U.S.C. § 666 in the District of South Dakota and elsewhere.

Defendants attempt to distinguish their case from *United States v. Field*[27] is unavailing. In *Field*, the court found venue in the District of South Dakota to be proper when the parties stipulated to the following: (1) emails regarding the purchase of equipment were sent and received from within South Dakota where a co-defendant resided; (2) the Tribe paid the purchase price for the equipment via a wire-transfer sent from the Tribe's Sisseton, South Dakota bank account to a Florida escrow account; and (3) "the alleged kickback was paid to [defendant] from the Florida escrow account (using funds sent from the Tribe's bank account)."[28] Granted, the ties to South Dakota in *Field* are stronger than those here. But the stipulated fact that the alleged bribes emanated from and related back to South Dakota payments and bank transfers appears

---

[25] *Id.*

[26] *Id.*

[27] *United States v. Field*, 1:19-CR-10019-02-CBK (D.S.D. Jun. 1, 2021) (order on change of venue motion).

[28] *Field*, 1:19-CR-10019-02-CBK at 2-3.

to be independently sufficient to establish venue under relevant case law.[29] Indeed, if the court in *Field* did not regard the source of the kickback—funds paid from the Tribe's Sisseton bank account – to be pivotal to the venue question, then why did the court discuss and rely on this fact in its decision?[30]

Here, because the consulting payments came from Mobridge, South Dakota is at least one of the districts where venue lies. The professed criminal scheme began with the payment of funds from a South Dakota bank. Piccinelli then allegedly tapped into these funds to make kickbacks to Schreiber. The kickbacks sprung from an identifiable South Dakota nexus.

Put another way, Defendants "reached" into South Dakota by using the Tribe's Mobridge-drawn payments to bankroll, or at least subsidize, the asserted kickbacks.

---

[29]*United States v. Totaro*, 40 F. App'x 321, 323 (8th Cir. 2002) (using the 18 U.S.C. § 3237(a) "begun, continued, or completed" analysis to determine that "venue was proper, however, because Totaro's criminal scheme began with the transfer of funds from the bank accounts in South Dakota to his lending institutions"); *United States v. Chandler*, 66 F.3d 1460, 1470 (8th Cir. 1995) (gratuity offered – funds from a loan – originated from a savings and loan in the forum district, making venue in that district proper); *Field*, 1:19-CR-10019-02-CBK at 2-13 (pointing out that funds from the Tribe's South Dakota account were used to pay the kickback); *United States v. Crutchfield*, 379 F. Supp. 2d 913, 919 (W.D. Tenn. 2005) (source of bribery funds was forum district, something more than a trivial preparatory act insufficient to support venue).

[30]*Field*, 1:19-CR-10019-02-CBK at 3 (citing *Totaro* and finding venue was proper in South Dakota).

The payments provided the foundation for the kickbacks and were crucial components of, and not merely preparatory to, the bribery offenses.[31]

After a careful review of the indictment and stipulations, the Court finds, by a preponderance of the evidence, that South Dakota is a district in which the indicted offenses were "begun, continued, or completed"[32] and that venue is proper in this district.[33]

## CONCLUSION

The Government has demonstrated, under the required standard, that venue in the District of South Dakota is proper. For this reason, the motions to dismiss the indictment, based on improper venue, should be denied.

## RECOMMENDATION

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is

RECOMMENDED that Defendants' Motions to Dismiss[34] be denied.

---

[31] *United States v. Stephenson*, 895 F.2d 867, 874-75 (2d Cir. 1990).

[32] § 3237(a).

[33] *See Totaro*, 40 F. App'x at 323 (venue premised on fund transfers from out-of-state banks); *Stephenson*, 895 F.2d at 874 (venue proper under § 3227 where bribery based on "continuing acts" in more than one jurisdiction); *Field*, 1:19-CR-10019-02-CBK (describing a similar kickback scheme and finding venue in the District of South Dakota proper); *Crutchfield*, 379 F. Supp. 2d at 919 (venue exists because money for bribe came from district where defendant indicted).

[34] *See* Docket. Nos. 40, 45.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[35] Unless an extension of time for cause is later obtained,[36] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[37] Objections must "identify[] those issues on which further review is desired[.]"[38]

Dated this 22nd day of September, 2021, at Pierre, South Dakota.

**BY THE COURT:**

*[signature: Mark A. Moreno]*

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[36] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[37] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[38] *Arn*, 474 U.S. at 155.